IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARAVAN INGREDIENTS, INC. | ) | |
| | ) | Case No.   13-2592 |
| Plaintiff, | ) | |
| v. | ) | Jury Trial Demanded |
| | ) | |
| AZO, INC. and SEFAR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT AZO, INC.'S MOTION TO STRIKE CERTAIN OPINIONS AND TESTIMONY OF THOMAS EAGAR, ScD, P.E.

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 2
    A. Dr. Eagar's Qualifications ..................................................................................... 2
    B. Factual Bases for Dr. Eagar's Opinions ................................................................ 4
    C. Dr. Eagar's Methodology And The Scientific Bases For His Opinions ................ 6

III. ARGUMENT .................................................................................................................. 8
    A. Standard For Admissibility Of Expert Testimony ................................................ 8
    B. Dr. Eagar's Opinions Are Undoubtedly Based Upon Scientific Knowledge ..... 10
        1. Dr. Eagar Is Undoubtedly Qualified To Offer The Opinions Challenged By Azo's Motion ........................................................................................................... 10
        2. Dr. Eagar's Opinions Are Based Upon Good Grounds ................................ 11
    C. Dr. Eagar's Opinions Will Assist The Trier Of Fact .......................................... 13

IV. CONCLUSION ............................................................................................................. 14

CERTIFICATE OF SERVICE .............................................................................................. 15

# TABLE OF AUTHORITIES

### CASES

*Daubert* ---------------------------------------------------------------------------------------------------------------------------- passim
*Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 589, 113 S.Ct. 2786, 2795 (1993) ---------------------- 8
*Daubert,* at 592 -------------------------------------------------------------------------------------------------------------------- 9
*United States v. Downing,* 753 F.2d 1224, 1242 (CA3 1985) ------------------------------------------------------------- 9

### OTHER AUTHORITIES

3 Weinstein & Berger ¶ 702[02], p. 702–18 ----------------------------------------------------------------------------------- 9
Webster's Third New International Dictionary 1252 (1986) ------------------------------------------------------------- 9

### RULES

Fed.R.Evid. 602, 28 U.S.C.App., p. 755 --------------------------------------------------------------------------------------- 10
Fed.R.Evid. 702 ---------------------------------------------------------------------------------------------------------------------- 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CARAVAN INGREDIENTS, INC.** | ) | |
| | ) | Case No.   13-2592 |
| Plaintiff, | ) | |
| v. | ) | Jury Trial Demanded |
| | ) | |
| **AZO, INC. and SEFAR, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT AZO, INC.'S MOTION TO STRIKE CERTAIN
OPINIONS AND TESTIMONY OF THOMAS EAGAR, ScD, P.E.**

Plaintiff Caravan Ingredients, Inc. ("Caravan"), submits the following Memorandum in Opposition to Defendant AZO, Inc.'s ("AZO") Motion to Strike Certain Opinions and Testimony of Thomas Eagar, ScD, P.E. ("Dr. Eagar"):

**I.   INTRODUCTION**

It is unclear if AZO is challenging Dr. Eagar's qualifications to render his opinions. The ambiguity arises from AZO's apparent reliance on some of Dr. Eagar's opinions relative to the failure of the Screen, but not others. **[*See* ECF Doc. 132 - AZO's Memorandum in Support – pp 8-9 – "Dr. Eagar's primary opinion in this case, which is not being challenged in this Motion ..."]** Nonetheless, Caravan provides a summary of Dr. Eagar's qualifications herein to definitively dispel any questions regarding the same.

AZO's Motion to Strike illustrates, yet again, AZO's willful ignorance of the undisputed facts:

- Dr. Eagar's opinion that the stainless steel screen was unfit for its known and intended use is based, in part, upon the admissions made by AZO during fact discovery. In fact, the Court has now twice relied

1

upon these admissions in rendering admissions upon which this Court has twice now.  **[ECF Doc. 93 – pp 3 and 7-8;  ECF Doc. 131 – p 4.]**

- Likewise, Dr. Eagar's opinion that "AZO failed to perform the engineering design required for this application of their sifter" is based upon the admissions of AZO's corporate representative that AZO, in fact, did no design work or system integration with respect to the Screen and its use in the Sifter.  More specifically, that the transaction at issue in this litigation marked the first time that AZO ever sold a stainless steel screen with the same specifications as the Screen.  **[Exhibit 5 – Transcript of the Deposition of Mike Nichols – 55:6-13.]**  Despite this, AZO admittedly did nothing more than a cursory visual examination to ensure that the Screen generally matched the specifications it quoted Caravan.  **[ECF Doc. 131 – p 5.]**

Thus, it is clear that any challenge of the factual bases of these specific opinions offered by Dr. Eagar is wholly without merit.

Finally, there is absolutely no merit to any challenge of Dr. Eagar's methodology or scientific basis for his opinions.  As set forth herein, Dr. Eagar's methods and scientific knowledge base are sound.

AZO simply does not like those opinions of Dr. Eagar which it challenges with its Motion.  Unfortunately for AZO, just because it does not like certain opinions does not mean they are inadmissible under Fed.R.Evid. 702 and/or *Daubert.*

## II.   STATEMENT OF FACTS

### A.   Dr. Eagar's Qualifications

Dr. Eagar's *Curriculum Vitae*, which was disclosed with Caravan's Expert Disclosure, is attached hereto as **Exhibit 1**.  The following highlights from Dr. Eagar's *CV* demonstrate his overwhelming qualifications:

1. Dr. Eagar earned a Bachelor's of Science degree in Metallurgy and Materials Science from the Massachusetts Institute of Technology ("MIT") in 1972. He earned his Science Doctorate in Metallurgy from MIT in 1975.

2. Dr. Eagar has served as a professor in the Department of Materials Science and Engineering at MIT since 1976. From 1995 through 2000, Dr. Eagar was the Head of MIT's Materials Science & Engineering Department. In MIT's Department of Materials Science and Engineering, Dr. Eagar has served, in part, as a Professor of Materials Engineering and a Professor of Engineering Systems.

3. At the undergraduate level, Dr. Eagar has taught (in part) courses in chemical metallurgy, physical metallurgy, materials processing, essentials of engineering, and colossal failures in engineering.

4. At the graduate level, Dr. Eagar has taught (in part) courses in materials selection and product design.

5. At the professional level, Dr. Eagar has taught (in part) courses in materials selection, failure analysis, and non-destructive testing.

6. Dr. Eagar has authored or co-authored 218 papers/articles published in scientific or professional journals. Many, if not all of these publications are relative to the overall field of metallurgy. Many are focused on materials selection, failure analysis, and engineering design.

7. Dr. Eagar holds 16 patents.

8. Dr. Eagar is a registered professional engineer in the State of Massachusetts.

Additionally, the evidentiary record bears out these additional factors relative to Dr. Eagar's qualifications:

9.      Professionally, approximately 50% of Dr. Eagar's time is devoted to his activities at MIT. However, not all of Dr. Eagar's time relative to his MIT activities is teaching related. His MIT activities also include committee work and research. **[Exhibit 2 – Transcript of the Deposition of Dr. Eagar - 20:17-24.]**

10.     The other 50% of Dr. Eagar's professional time includes what he refers to as "outside professional activities," which includes forensic non-litigation consulting, unpaid service on national committees, and forensic consulting for litigated matters. **[Exhibit 2 – 20:17-24.]**

B.     **Factual Bases for Dr. Eagar's Opinions**

The following, undisputed facts, provide the factual support for the opinions of Dr. Eagar challenged by AZO's Motion:

10.     AZO knew the stainless steel screen was unfit for its intended and known use in the subject Sifter:

> In its motion, the plaintiff contends that AZO offered the stainless steel as an option even though it did not believe a stainless steel screen was fit for use, citing the testimony of AZO's Director of Customer Service Michael Nichols.
>
> AZO attempts to controvert this fact, arguing that Nichols "specifically testified that's how he expected a 30-mesh stainless steel screen would fail, but not that the subject 30-mesh stainless steel screen was not a viable option ... or that it was going to fail.
>
> This denial is not supported in the evidence, which fully supports Caravan's characterization.
>
> \*\*\*
>
> More importantly, the evidence is uncontroverted that AZO knew a metal screen would fail. Asked if "it's your opinion and it is AZO's opinion that 30-mesh stainless steel screen should not have been used

4

in this screener?" Nichols responded, "Yes." **[ECF Doc. 93 – pp 3 and 7-8.]**

\*\*\*

The court finds that AZO failed to fully inform Caravan that the screen was not viable. While Gutierrez may have alerted Caravan to the fact that the stainless steel is not stronger than nylon, and the "risk" of fatigue and failure, she did not fully inform Caravan of the extent of the defendant's knowledge. Nichols testified that he knew the metal screen was "not going to work." He agreed that he "knew [the screen] was not sufficient." After learning of the failure of the screen, he testified that "[t]hat is w[hat] I would expect, ' that is "how it is going to fail." He explicitly agreed with the proposition that the metal screen "was not a viable option." In sum, AZO knew the failure of the metal screen was *certain* ("it is going to fail"), but it told Caravan only that such failure was *possible* ("you run the risk" of failure). **[ECF Doc. 131 – p 4.]**

11.  Dr. Eagar reviewed the deposition transcripts of Mike Branson, Charles Kerwin, Mike Nichols, Steve Threatt, and Cindy Asquino. **[Exhibit 2– 13:11-22.]**

12.  Dr. Eagar understands from his review of the facts of this matter that AZO did nothing more than a visual examination and repackaged the screens for shipment to Caravan when AZO received them from Sefar. **[Exhibit 2 – 42:15-17.]**

13.  With respect to Dr. Eagar's specifically enumerated opinion 4, he bases his opinion, in part, upon the testimony from AZO that a stainless steel screen was unfit for the known and intended application in the Sifter. **[Exhibit 2 – 54:17-55:6.]**

14.  Dr. Eagar also relies upon Figure 1 in his report **[Exhibit 3 – Dr. Eagar's Report – p 5, ¶ 4, referencing Figure 1 on p 2]** in forming his specifically enumerated opinion 4. Importantly, AZO stipulated to the admissibility of Figure 1 from Dr. Eagar's Report. **[*See* the Pretrial Order - § 2.b. – Stipulated Exhibit 13.]**

15. With respect to Dr. Eagar's specifically enumerated opinion 8, he bases his opinion, in part, upon a page from the AZO Operating Manual for the subject sifter – AZO 0038 – the email from Ms. Asquino to Mr. Gutierrez in which she states that "stainless steel is not stronger than nylon" – CAR 001944. **[Exhibit 3 – p 6, ¶ 8.]**

16. In formulating his opinions in the "Engineering Design" section of his report, Dr. Eagar relied upon the admissions of Mike Nichols and Cindy Asquino, which this Court adopted in its previously issued opinions. **[Exhibit 2 – 79:5-21.]** **[*See also* ECF Docs. 93 and 131.]**

17. Importantly, AZO's forensic expert, Phil Buckley, does not have any data on the actual flow rate impacting the Screen at the time of its failure. **[Exhibit 4 – Transcript of the Deposition of Phil Buckley – 155:1-2 and 174:17-21.]** More specifically, Mr. Buckley admitted that there is no data showing the actual flow rate. **[Id.]**

18. AZO had never sold this particular screen, prior to the transaction at issue in this litigation. **[Exhibit 5 – 55:5-13.]**

C.   **Dr. Eagar's Methodology And The Scientific Bases For His Opinions**

Dr. Eagar followed the following methodology and relied upon the following scientific bases in forming the opinions challenged by AZO's Motion:

19. Dr. Eagar participated in creating the joint protocols for testing of the failed Screen, the exemplar screens, and other physical evidence in this matter. **[Exhibit 2 - 7:13-18.]**

20. Dr. Eagar reviewed the results of the joint testing performed by the parties. **[Exhibit 2 - 7:13-18.]**

6

21. Dr. Eagar reviewed the scanning electron microscope ("SEM") photographs generated by the joint testing performed by the parties. **[Exhibit 2 – 33:4-8.]**

22. Dr. Eagar opined that the Screen failed due to fatigue. **[Exhibit 2 – 33:14-25.]**

23. AZO's expert, Phil Buckley, agrees there are signs of fatigue failure on the wires comprising the Screen, although he disagrees that that the Screen failed due to fatigue. **[Exhibit 6 – Buckley Report - § Rebuttal of Dr. Eagar's Report – p 34 of 52 – exhibits omitted.]**

24. With respect to Dr. Eagar's specifically enumerated opinion 4, he bases his opinion, in part, upon the material properties of nylon in a flexing environment versus stainless steel in a flexing environment. **[Exhibit 2 – 54:12-16.]**

25. Dr. Eagar also based his specifically enumerated opinion 4 upon scientific literature in the field of materials science and metallurgy. **[Exhibit 2 – 54:17-55:6.]**

26. With respect to Dr. Eagar's specifically enumerated opinion 5, he bases his opinion, in part, upon Exhibit C to his report – a treatise entitled The Effect of Temperature And Other Factors On Plastics Volume 1-Book A, prepared by the Plastics Design Library of New York in 1990. **[Exhibit 3 – p 5, ¶ 5 *citing* Exhibit C attached thereto.]** This treatise provides the "Stress v. Strain" curve for nylon.

27. Dr. Eagar also relies upon a text entitled Deformation Processing authored by Walter A. Backofen of MIT in 1972 in support of his specifically enumerated opinion 5. **[Exhibit 3 – p 5, ¶ 5 *citing* Exhibit D attached thereto.]**

28. Additionally, Dr. Eagar relies upon a text entitled Fatigue of Engineering Plastics authored by Richard W. Hertzberg and John A. Manson in 1980 in support of his

specifically enumerated opinion 5. **[Exhibit 3 – p 5, ¶ 5** *citing* **Exhibit E attached thereto.]**

29. In formulating his opinions in the "Engineering Design" section of his report, Dr. Eagar specifically relies upon the "ASM Handbook, Vol. 20 – Materials Selection and Design" and the text <u>Design for Manufacturing: A Structured Approach</u> authored by Corrado Poli, published in 2001 for the four stages of the engineering design process and the explanation of guided iteration. **[Exhibit 3 – pp 6-7,** *citing* **Exhibits F and G attached thereto.]**

### III. <u>ARGUMENT</u>

#### A. <u>Standard For Admissibility Of Expert Testimony</u>

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify: "*If* scientific, technical, or other specialized *knowledge will assist the trier of fact* to understand the evidence or to determine a fact in issue" an expert "may testify *thereto*." *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 589, 113 S.Ct. 2786, 2795 (1993), citing Fed.R.Evid. 702. (Emphasis in original.) The subject of an expert's testimony must be "scientific, technical, or other specialized knowledge." *Id*, at 589-590.

As it applies to the instant matter, the adjective "scientific" implies a grounding in the methods and procedures of science. *Daubert*, at 590. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. *Id*. The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as

8

truths on good grounds." *Id*, citing <u>Webster's Third New International Dictionary</u> 1252 (1986). But, in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. *Id.* Proposed expert testimony must be supported by appropriate validation—*i.e.*, "good grounds," based on what is known. *Id.* In short, the requirement that an expert's testimony pertain to " scientific knowledge" establishes a standard of evidentiary reliability. *Id.*

Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, at 591 citing Fed.R.Evid. 702. This condition goes primarily to relevance. *Id.* " Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*, citing <u>3 Weinstein & Berger</u> ¶ 702[02], p. 702-18. See also *United States v. Downing*, 753 F.2d 1224, 1242 (CA3 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute"). Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. *Id*, at 591-592.

Accordingly, court, in contemplating a *Daubert* challenge, must analyze whether the proffered expert has the requisite "scientific, technical, or other specialized knowledge" and if the proffered testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592, 113 S.Ct. 2786, 2795-2796 (1993) *citing* Fed.R.Evid. 702. Importantly, unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. *Daubert*, at 592 *citing*

9

Fed.R.Evid. 702 and 703. Presumably, this relaxation of the usual requirement of firsthand knowledge—a rule which represents "a 'most pervasive manifestation' of the common law insistence upon 'the most reliable sources of information,' " Advisory Committee's Notes on Fed.R.Evid. 602, 28 U.S.C.App., p. 755 (citation omitted)—is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. *Id.*

### B. Dr. Eagar's Opinions Are Undoubtedly Based Upon Scientific Knowledge

#### 1. Dr. Eagar Is Undoubtedly Qualified To Offer The Opinions Challenged By Azo's Motion

As noted herein, it is unclear if AZO is actually challenging Dr. Eagar's qualifications to render the opinions it challenges, although AZO attempts to make an issue of the fact that Dr. Eagar is not an expert in "screening flour." **[*See* ECF Doc. 132 – I. Introduction – p 2.]** Of course, the screening of flour is not at issue in this litigation, but rather why the stainless steel screen at issue failed, if stainless steel was a viable option for use in this application (which this Court already determined, based upon AZO's own admissions, it was not), and what engineering was required of AZO relative to the integration of a stainless steel screen into the AZO-manufactured Sifter. Indeed, no forensic expert involved in this litigation is an expert in the screening of flour. Quite frankly, the topics of material failure (the failure of the screen), material selection (stainless steel v. nylon) and engineering design are areas of scientific inquiry in which Dr. Eagar is one of, if not the, preeminent experts in all of the United States.

For the sake of brevity, Dr. Eagar's qualifications to offer opinions on material failure and material selection include:

10

- Bachelor's of Science degree in Metallurgy and Materials Science from MIT – **[Statement of Facts ("SOF") 1]**

- Science Doctorate in Metallurgy from MIT – **[SOF 1]**

- Approximately 40 years as a professor in the Department of Materials Science and Engineering at MIT, teaching undergraduate courses in chemical metallurgy, physical metallurgy, materials processing, essentials of engineering, and colossal failures in engineering, as well as graduate level courses in *materials selection and product design* - **[SOFs 2-5]**

- Publication of 218 papers/articles in peer reviewed scientific and/or professional journals, many focused on materials selection, failure analysis and engineering design – **[SOF 6]**

- He holds 16 patents – **[SOF 7]**

- He is a Registered Professional Engineer – **[SOF 8]**

Based solely upon a review of Dr. Eagar's *CV* there is no doubt that he is qualified to render those opinions challenged by AZO.

2. **Dr. Eagar's Opinions Are Based Upon Good Grounds**

AZO argues that Dr. Eagar's opinions are based upon nothing more than "mere speculation." Clearly, this statement is not supported by the evidentiary record. Rather, Dr. Eagar's opinions are based, in part, upon the undisputed factual record, including:

- The Court's determination that AZO knew the stainless steel screen as an unviable option for its known and intended use at the time AZO sold it to Caravan – **[SOF 10 *citing* ECF Docs. 93 and 131]**

- Dr. Eagar's review of the depositions of Charles Kerwin, Mike Nichols and Cindy Asquino – **[SOF 11]**

- The admissions contained in the depositions of Mike Nichols and Cindy Asquino relative to (1) AZO knowing the stainless steel screen was unfit for its known and intended use; (2) this instance being the first time AZO ever sold a screen with the same specifications as the

11

>   Screen at issue; and (3) AZO doing nothing to verify the specifications of the Screen and if it would properly function in the Sifter at Caravan's facility – **[SOFs 12, 13, 16, and 18]**
>
> - Dr. Eagar's review of the documentation produced in this matter, including exhibits the parties have stipulated are admissible at trial – **[SOFs 14 and 15]**

Moreover, Dr. Eagar's scientific bases and methodology are sound. In fact, his methodology is identical to that employed by AZO's expert. As noted herein:

> - Dr. Eagar participated in creating the joint protocols for testing of the failed Screen, the exemplar screens, and other physical evidence – **[SOF 19]**
>
> - Dr. Eagar reviewed the results of the joint testing performed by the parties, including the SEM photographs generated at the testing in September 2014 – **[SOFs 20 and 21]**
>
> - Based upon his review of the data gathered during the joint testing, Dr. Eagar opined, in part, that the Screen failed due to fatigue – **[SOF 22]**
>
> - Importantly, AZO's forensic expert agrees the wires comprising the Screen showed signs of fatigue failure – **[SOF 23]**
>
> - All of the opinions challenged by AZO are based, in part, upon peer reviewed, well accepted scientific literature in the fields of materials science, metallurgy, and engineering design – **[SOFs 25-29]**

Based upon the above, AZO's claim that Dr. Eagar's opinions are based upon mere speculation are, quite frankly, bizarre. A simple review of Dr. Eagar's Report and deposition testimony reveals a plethora of facts supporting his opinions. Thereafter, Dr. Eagar applies his scientific knowledge, reasoning and analysis based upon his extensive qualifications in the fields of metallurgy, materials science, and engineering to reach his conclusion. As such, there cannot be any dispute that Dr. Eagar's opinions pass the scientific knowledge component of the *Daubert* analysis.

### C. Dr. Eagar's Opinions Will Assist The Trier Of Fact

AZO's Motion does not actually challenge Dr. Eagar's methodology. Rather, AZO is really attacking the second prong of the *Daubert* test – does the testimony assist the trier of fact. In doing so, however, AZO essentially argues that the question at issue is "How did Caravan cause the Screen to fail?" and not "Why did the Screen fail?" As this Court is well aware, AZO attempts to answer the question of "How did Caravan cause the Screen to fail?" by arguing that Caravan overloaded the Screen. Of course, as argued in **ECF Docs. 129 and 136,** AZO offers this answer without any actual data, but only Mr. Buckley's assumption that Caravan was somehow capable of overloading the Screen. Dr. Eagar's opinions, conversely, do not rely upon assumptions and guesses, rather, they are based upon the actual undisputed facts and an application of sound scientific knowledge to those facts.

The core issue in this litigation is "Why did the Screen fail?" The opinions challenged by AZO go directly to this issue. Unfortunately for AZO, Dr. Eagar has and will opine that the Screen failed because (1) the stainless steel material was unfit for use in the known application and (2) AZO did nothing to test the Screen (which had never previously sold) to determine if or how it could be made safe. Stated another way, Dr. Eagar's opinions provide scientifically grounded explanations for undisputed facts – that AZO knew the Screen was unfit for its known and intended use. In reality, AZO is simply challenging Dr. Eagar's opinions because they support Caravan's claims that AZO is liable for the Screen failure and the resulting damage.

## IV. CONCLUSION

As set forth herein, Dr. Eagar is undoubtedly (1) well qualified to offer the challenged opinions, (2) which are well grounded in fact and science, and (3) will assist the jury in answering the core question at issue in this litigation – "Why did the Screen fail?" As such, AZO's Motion to Strike must fail.

Dated: April 2, 2015

**Respectfully submitted,**

**BAKER, STERCHI, COWDEN & RICE, LLC**

*/s/ Paul S. Penticuff*
Paul S. Penticuff KS #70341
2400 Pershing Road, Suite 500
Kansas City, MO 64108-2533
P: (816) 471-2121/F: (816) 472-0288
Email: penticuff@bscr-law.com

and

Melinda A. Davis – *Admitted PHV*
Paul A. Casetta – *Admitted PHV*
Denenberg Tuffley, PLLC
28411 Northwestern Hwy, Suite 600
Southfield, MI 48034
P: (248) 549-3900/F: (248) 593-5808
mdavis@dt-law.com; pcasetta@dt-law.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 2nd day of April, 2015, a copy of the foregoing was electronically filed with the United States District Court by using the CM/ECF system which will send Notice of Electronic Filing to the following:

Chad R. Beashore #22738
Jennifer J. Artman #78451
Shook, Hardy & Bacon, L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
P: (816) 474-6550/F: (816) 421-5547
cbeashore@shb.com; jartman@shb.com
***Attorney for Defendant Sefar, Inc.***

Michael J. Tubbesing #16982
Franke, Schultz & Mullen
8900 Ward Parkway
Kansas City, Missouri 64114
P: (816) 421-7100/F: (816) 421-7915
mtubbesing@fsmlawfirm.com
***Attorney for Defendant AZO, Inc.***

*/s/ Paul S. Penticuff*
One of Plaintiff's Attorneys